We'll call our first case of the day, MercerOutdoorAdvertising v. CityofHermitage,et.al. Your Honor, I would like to reserve seven minutes for rebuttal. That's a lot of rebuttal, but we'll allow it. We're going to hold you to your other eight minutes. Yes, Your Honor. Make the case to court. Good morning, Your Honors. Adam Webb on behalf of MercerOutdoorAdvertising, the appellant in this matter. My client is a small family-owned sign company in western PA. They signed agreements with seven landowners in Hermitage to allow advertising signs. Mr. Webb, when you signed those agreements, weren't you aware of where you wanted to put those billboards? The billboards were not permitted, and the size of your billboards was not within compliance with the ordinance? Your Honor, I'll say it's commonly known among sign companies in Pennsylvania that you cannot ban billboards, and if you read this ordinance... Oh, you can ban billboards. Interstate, we said you can ban billboards, but you have to do them in compliance with an ordinance, and size restrictions and location restrictions have been upheld. How do you have standing to challenge all the other myriad flaws you find in this ordinance? The interstate decision, of course, was out of New Jersey, and that state has a different law. Pennsylvania does not allow banning of billboards. It's very clear. And in this ordinance, it flat out says... But there is no ban. You are permitted to have billboards. You just didn't put them in the right place or didn't want to put them in the right place and also didn't comply with the size requirements or height or location requirements. Counsel, I would request that the court look at 49.55, which says no billboards, flat out. Now, you're saying there's another provision of the code that allows billboards, perhaps, and it contradicts so that the specific regulations of billboards found in the signed ordinance do not allow billboards. That's quite clear. For example, in every single district, it says a sign has to, quote, indicate the name and nature of the business of the same law. Isn't it the case that the regulations or statutes do not allow billboards unless you are in compliance with certain specific size, location requirements? The first element of any billboard is to look at the definition of billboard. It has nothing to do with size, height, anything like that. It's just about content. The definition of billboard is a sign indicating a business conducted, a commodity sold, or a service rendered somewhere else than on the premises. We've been through this since 1981, and the exact same framework used by hermitage has been thrown out by court. You're saying you're making a facial challenge, correct? We're making both an as-apart and a facial challenge. We were denied, based on the definition of billboard, the content basis of that definition. You were denied the 306-10. You have taken that, and now you call it signed regulations, plural. And among the many that you list are 202, 306, 308-27, 409-7, 409-47, 503-4, and 608. As your honors know, if we don't challenge... ...and as applied, the whole zoning ordinance should be struck, correct? Not the whole zoning ordinance. The signed regulations. I certainly wouldn't... You tell it will. The signed regulations comprise a lot of zoning ordinances. And I read your papers to say the whole thing has to go. Section 409 and the definitions that qualify it should go. Section 409 is the signed regulations. It's not that long. It's probably five pages. I listen to these others about the only things listed in your complaint, and it's only by number. You don't tell us why they're unconstitutional, and all you do is put a forend to tell us what they are. But the bottom line of your complaint is the ordinance has to go as a whole. We don't even deal with the severability provision at 107, which you don't mention. When you look at what the Supreme Court did in Metro Media, they struck those provisions of the San Diego Code. They remanded to the California Supreme Court, and the entire San Diego signed ordinance was thrown out. Let's back up here. You were denied the permit to have your billboard because you wanted to put it in a commercial district, and they're not allowed in a commercial district. Isn't that correct? I mean, that's the injury, correct? No, the injury is not being able to put up the billboard. It has nothing to do with the reason for the injury. So we have an injury, in fact, as we're talking about the standing analysis here. And your injury is traceable to the locational requirement, the fact that commercial zone billboards, they can be put in the industrial and others, but not in commercial. Just the industrial. How is any other aspect of this ordinance, how is your injury traceable to any other aspect of this ordinance? Well, there's a number of issues there. No one has ever said we lack traceability, to be honest with you, Your Honor. I'm asking you, do you? I'm asking you, this part of standing, it's the second part of standing. Sure. How is your injury traceable to anything other than the section that says no billboards in commercial? What we know is when a speech is at issue, and billboards in particular, if we don't challenge any provision that would stop the signs at issue, then we do not have redressability. That is this Court's findings, and Coastal Outdoor and others. I'm asking you about traceability. Redressability is the third prong. Traceability is the second prong. You need all three. Well, we have the ability to challenge or sign regulations that would affect signage, affect our signage, obviously under decisions such as Judge Barry's Nationals Movement v. York decision, or the Supreme Court's decision in Plain Dealer Publishing. You're not telling me that I spoke for the Court and said you can raise everything but the kitchen sink in a complaint? Did I say that? No, Your Honor. You said that in the realm of free speech, when it has an impact on other folks, you allowed a large breadth of standing, and when it comes down to the discretion under an ordinance or procedural safeguard violations, these type of things that affect all permits at all times, any applicant, or non-applicant, don't even have to apply, because that's what the Supreme Court said in Plain Dealer Publishing. Any applicant or potential applicant has standing to challenge those. Your friends across the aisle moved to dismiss on standing grounds. I think they could have moved to dismiss under it, probably wrongly, but they mentioned it in their papers. But they moved to dismiss on standing grounds, correct? Yes, they did. I don't mean to suggest ducted, but the district court did not decide it on standing grounds. You would not disagree that we have the obligation to revisit standing here or to visit it in the first instance, correct? You must, and we began our brief with it. No, it wasn't an issue in the trial court order. You were rejected because you proposed to put the sign in a place that the municipal ordinance or the hermitage ordinance or regulation prohibited. I will qualify that, Your Honor, by saying we were rejected because of what the signs would say. That's how the billboard is defined. No, you're talking about content, but they explicitly said you can put a sign there, but you cannot definitely put a sign over there. In other words, you could put a sign in the industrial section, but you cannot put one in the commercial zone. Is that correct? In a manner of speaking, yes, Your Honor. But you're saying sign, and they have a very specific provision for billboard, which is only dependent on what it says. I'll take back the word sign, and I'll use the word billboard. Right. Billboards are only allowed in industrial zones. Billboard is based on what it says. Isn't that the basis for rejection? The basis is it was a billboard in the wrong zone. Right. Okay. And is there any constitutional infirmity with the regulation under which your sign was rejected? Absolutely. This is exactly what we've been throwing out for 35 years. What was that constitutional infirmity with respect to location? I mean, what about these are constitutionally authorized to designate where billboards may or may not be posted? You simply cannot define billboards to exclude noncommercial speech and then restrict them in this fashion. We know that. You propose to put a noncommercial speech billboard in any zone within hermitage? Absolutely. Did it satisfy the height, the size, and the location requirements? Please review the code. The answer is no, it did not. Well, you're saying the billboard regulations. But our signs were not defined as billboards because they included noncommercial speech that does not fit within that definition. It does not fit within that definition. Well, your complaint is a little bit confusing on this issue because at one paragraph you say billboards regulate both commercial and noncommercial. And your time is up. You've saved it for later. One more point you can answer later. I understand that the district judge in this case had abstained from exercising jurisdiction over the state law claims. Correct. And then I see that the order dismissed those same claims with prejudice. Could you respond to that, seeing whether the propriety of that decision when you get back? Yes, Your Honor. Thank you. May it please the Court. First, my name is David Rosenberg, and I represent the city of Hermitage and its zoning hearing board. Now, Section 306.1 doesn't allow billboards in the commercial districts. Mercer filed seven applications to construct billboards, and they were all in the commercial district. Yes, I think we really established that. Let me ask you a question. A couple of the allegations, they might have standing, and that would include the city exception, the fact that the billboards regulate non-city, but when it comes to the city, billboards are permitted, not just locational billboards, but billboards advertising meetings, et cetera. Hasn't that type of ordinance been struck down, or that exception been struck down, and can they not complain about that as a facial matter? Well, I think the distinction is these aren't billboards. They're signs for events, for community events. So they would be short in period of time for a specific event, as opposed to I think the cases where they were struck down, it was more general. So these are limited, and they're just signs, banners. But aren't billboards advertising city events permitted in a way that billboards that are not advertising city events are not? I think it's signage for, well, in this case, they're not seeking any advertisement for these types of events. Was it seeking to, as a patriotic matter, say, support our troops in Samaritan's Purse? Even though this is a profit company that's willing to make money. As far as the message that they're proposing, each of these application forms prepared by the city, they don't ask for any content, but Mercer decided to attach the content. What it says is, this will be a changeable message digital billboard. The first message to appear on the sign will be the following, and a promotional advertisement for Samaritan's Purse, which is an international relief organization. Okay, that's a different bucket. I was talking about the city exception. Now we're talking about the fact that if you read the ordinance and the definition of billboard, it does not include noncommercial speech, does it? I disagree with that. The billboard definition is as follows. Yeah, read the first three phrases. A billboard, a sign indicating a business conducted. Okay, indicating a business conducted. Okay, second. Commodity sold. Commodity sold. Third. The third is where I think it's noncommercial. Service rendered. Service rendered. Right. Let's talk about service. Sign indicating a service rendered. We have social services. We have nonprofit services. So support our troops talks about a service rendered? I believe it could be considered talking about a service rendered, the military service. Would Mercer have the ability to challenge the ordinance facially on that basis as a matter of standing? I don't think so. Why is that? Well, because it's not content-based. Oh, it is. Well, the service rendered, a service is not necessarily a commercial. A service can be public service, governmental service. Mercer, in fact, did offer a sign that said support our troops. They did. What was wrong with that? Well, first of all, they didn't. We don't know that they offered it. They just gratuitously attached this message. It's in the applications. It's in the application. But there's nowhere, excuse me, Your Honor, but there's nowhere in the application where it asks for content. They just gratuitously attached the content. But if you read what they attached, this is what it doesn't, they're not committed to having this message. It doesn't say the exact message. Just assume hypothetically that they did. Why would such a sign be rejected? Why would it be rejected? Yes. The only reason the sign would be rejected, it wouldn't be rejected for the content, it would be rejected because they're applying for it in the commercial districts. And then it also, although this wasn't part of the- Can the city post signs involving services in commercial districts? The city can post banners and signs for events. But commercial sign companies who want to post services messages cannot do that. They could post, if it complied, they could post a sign on the building, they could- No, we're talking about off-premise. No, they could not. So there's a difference between the city and everybody else, correct? There is a difference between the city and everybody else. And so is that a basis on which the ordinance should be struck down? No, I don't think it is a basis on which the ordinance should be struck down because there's a- Could you sever that provision? Under RAPA, could you sever that provision? You probably could sever that provision, but I think the provision, that provision would fall within the governmental, could fall within the governmental interest. In RAPA, didn't we say that proper remedy for content discrimination, which this is, city versus non-city speech, generally cannot be to sever the statute so that it restricts more speech than it did before. So wouldn't we have to strike down the whole ordinance? Wouldn't it be subject to strict scrutiny in any event? Well, like I said, I think that this is limited for temporal, short temporal events and that's it. It's serving a purpose of- No, well, but that's not what's been found to be permissible. What's found to be permissible is something that's situated or that has a message that indicates the location, that's a locational sign. But not advertising a meeting or an event which someone else who's non-city could not put their event up there, but the city can. I think this falls somewhere in between. The cases that have stricken it also were broader and allowed anything, any industry. I believe that in RAPA it also mentioned industry. Could you talk about two of Mr. West's challenges to the ordinance too? Two other challenges that he raises. One is the city's unbridled discretion to grant or deny and the second is that it has no time limits within which it can issue a decision. In other words, you can just sit on an application forever and never rule on it. In essence, that would be like a pocket veto. Right. As far as the unbridled discretion, I don't think it's unbridled discretion because the- But the way that he's using this in the ordinance- Well, I think you can't look at that in a vacuum. You also have to look at 308.27. 308.27 says the billboards shall be permitted as a conditional use in industrial districts and the limitations then are things like size- The same restrictions on height and size and location. Right. It's size- Which you challenge before the board in terms of 306.10, but you don't challenge before us as I read it. Well- That was the basis for denial. The district court looked at 306.10 in 308.27 and 308.27 was- Okay, I want to go back to basics, if you'll permit me. You, in your motion to dismiss, in the brief that you submitted in connection with the motion to dismiss, raised in the standard of review section only Bell Atlantic v. Twomley. I don't see the case cited anyplace else in the brief. And your argument then went to standing on the merits. Right. It went to standing and then I think, with all due respect, you went into the merits of all of the numbers mentioned in the complaint. But there was only one paragraph that really mentioned anything that we're all talking about today and that was paragraph 28. It's got one legal conclusion after another, one after another. Any number of sections of the regulations mentioned with no reason why they would apply in this case. Two and a half pages, I think, was the full substance, if you will, of what I perceive to be a bare bones deficient complaint. But meanwhile, this case has a life of its own now. The briefing before us is now up to 130 pages, mostly on the merits or lack thereof of this kitchen sink of numbers that are just thrown at us. You should have, don't you think, pressed it? How could a judge even make a standing analysis? How could a judge deal with whether there was an injury? We don't know what the injury is. We don't know about traceability. You can't tell off the complaint. The only thing the judge could have found, and I speak only for myself, is that it was plaintiff's burden to establish Article III standing. We didn't meet the burden. That's our argument, and that's why we already stand. I guess my harangue is simply because I don't see that you pressed that. And now we're here with every constitutional violation known. I don't think the ordinance does anything right in plaintiff's view. And meanwhile, this is all coming off of one paragraph in a complaint. Well, we raised the standing argument that the district court did not address standing. I'm talking about Iqbal Twombly. I'm talking about the pleading, in my view, was deficient here. Shouldn't you have pressed that? Maybe you're wrong in hindsight, but I don't think they'd met the standing. All right, if you're going to write the opinion your way, if you want us to write the opinion your way, tell us exactly what it's going to say. I think first it would say that there is not standing. What do you mean by that? Well, redressability. I think it's not redressable because, for one thing, they chose to place these billboards or apply for the billboards where the billboards clearly were not permitted. What's it? Define it. In answer to Judge Rendell's question, it. It's not redressable. Oh, I'm sorry. The decision to reject the permit applications. Well, let's say for the sake of argument that we find content-based discrimination in the ordinance that can, under case law, be challenged by someone who has a billboard company and that because under RAPA we really can't sever that, we throw out the whole ordinance. Doesn't that provide redress for the plaintiff who then can put up a billboard wherever he wants of whatever size because there is no prohibition? Well, if the entire ordinance was stricken. Okay. Should it be? What's your authority for if we find problematic unconstitutional provisions that we can sever? The, I think that the ordinance, these sections of the ordinances have to be read together so it would make it. Well, then you're saying there is no severability, aren't you? Well, I think that these elements, like 306.10 has to be read in conjunction with 308.27 because these are what's relevant to the issue of applying for a billboard and determining where the billboard should be located and the size of the billboard and those types of issues. But other provisions that may be unrelated in the ordinance. Your time is running very quickly. Could you comment on the district court's dismissal of the state claims that were dismissed with prejudice? That was wrong, wasn't it? I agree. I think that that issue is still, that can't be dismissed. The district court said that they chose not to rule on it. If they chose not to rule on it, the way I would interpret that is Mercer would still have those claims available in state court. You answered my question. I have one more question. If Mercer came in with a billboard meeting the size and placement requirements in 308.27, would you have any objection to it? No, because I think it says they shall be permitted. So if it was in the industrial district, it met the setbacks and met the size requirements, the way we interpret that is we would have to grant the permit for a billboard in the industrial district. And I think that's the whole crux of this case. I don't know. Are you saying commercial speech, non-commercial speech, all of it? All of it. There's not a distinction. Thank you. But the city can post non-commercial speech messages outside the industrial zone. That's correct. The city can do it wherever. Thank you. Mr. Webb, what about your colleague's interpretation of service rendered? Wouldn't that cover the non-commercial speech, support our troops or help the Girl Scouts or whatever? Absolutely not. If you look at that in context, it's talking about a service rendered on this other parcel. It's saying a business conducted somewhere else on another parcel, a service rendered, or a commodity sold on another parcel. It doesn't say that. It's just off premise. And it says somewhere other than on the premises. You're right. Some other premises. And so when it's something that is not conducted, sold, or rendered, and rendering has a very specific meaning. It's not an idea floating out there, which is what most non-commercial things are. If somebody wants to say stop the war, it's not rendered anywhere. It's a non-commercial idea entitled to the most protection we can possibly offer. And please review this code. You can't post it on a freestanding sign in hermitage. Did you make an application for such a billboard? Yes, we did. This said support our troops, which is an idea. It is not rendered on any premises. And therefore, we are directly protected by the highest rung of protection. Therefore, you cannot cabin us in a little bitty district where no one is with tiny signs, particularly when other signs, such as the city events, or political signs about elections, can be as big as you want and anywhere in the city you want. There's nothing wrong with limiting the size of a sign, regardless of what district it's in. Absolutely. If you didn't do it based on content, they could say the biggest sign in the city is a... Absolutely. There's something wrong with that? There's nothing wrong with... You could have a 50-foot sign on the roadway in a commercial or an industrial zone? There's nothing... I may have misspoken, Robert. There's nothing wrong with the city regulating the size of all signs. They can say no sign in this city shall exceed 100 square feet. That's fine. But they can't say if you say this, you can put it here and do this and put it over here. And they certainly can't say we can do what you can't do. They say any other for-profit operation can come in with an application and just say, well, we want to support the Girl Scouts, and then all bets are off. Well, that's what they say for political candidates. Please look at the exemption for political signs. It can be... On premises. No, no, no. Political signs are allowed as an exempt category. No permit needed, any size, any height, any district. But they have to be gone within five days of the election. Okay, political... So they're saying you can advertise the Hillary Clinton campaign for two years on a 180 square foot sign, but you cannot advertise stop the war or abortion is murder or any of these other pure political, not political, pure non-commercial ideas that aren't related to an election. You want us to strike down this entire ordinance, is that correct? And then Hermitage decides to say, you know what? We're going to ban all billboards. It's tough. It's really tough trying to draw lines in the billboard business. We're going to do what the Third Circuit said was just fine in interstate and say, you know what? In the city, no billboards. Where are we going with this? Well, to be clear, in Pennsylvania you could not do that. That's a state claim that the court did not reach, and it's not before this court. And as we've all agreed now, it should not have been dismissed with prejudice. We just don't want to go to state court and have somebody hold this in our face and say you can't bring this claim, it's been dismissed with prejudice. So that needs to be cleaned up. But, Your Honor, on that issue, in Pennsylvania you cannot ban the billboards. So I take your point, however. What are they going to do? Are they going to clean up this ordinance to make it non-content-based and end up being more restrictive? That has happened time and time again in my experience, and it is an unfortunate byproduct. Well, then I'm asking, where do you want us to go with this? We certainly want the court to recognize that this is an archaic sign regulatory framework, and it has to go. You cannot favor certain types of speech. You cannot harm. But that framework didn't injure you. Your injury is not traceable to that framework, is it? It most certainly is, Your Honor. Because you have not attacked the sign, size, or location. You haven't attacked anything which forms the basis for your denial. Your Honor, the billboard definition cabins us in a little part of town because we had support our troops. That's not the basis for the denial. Because it's a billboard, you're limited to that district. Yes, Your Honor. It's based on the content. Because it's a billboard, yes. Because it's a billboard, that's the only reason we were put in this box. And the billboard definition has nothing in it but content. And so if this sign had said, on Bob's Gas Station, stop here and buy cigarettes, we could have put it on Bob's Gas Station. That can never be allowed because we wanted to say support our troops. We were denied. But stop at Bob's Gas Station and buy cigarettes. But now you're talking about on-premise, off-premise, which the Supreme Court has seen the distinction there. So you're arguing so many different, you know, the kitchen sink of numbers, as Judge Barrett said, just thrown at us. I wonder if you have any idea the number of hours that the three judges here have spent trying to figure this out. And I absolutely apologize. You know, we need seven minutes of rebuttal. It didn't used to be that way. Then, excuse me, it didn't used to be this way. But then the courts came out and said, if we didn't attack any provision that could have stopped us, and this Court has been part of that issue, such as the coastal outdoor decisions out of New Jersey, any little thing that's in the code that we don't attack that could stop our signs, if we didn't attack it. Even though it might apply to you, and it may never apply to you, and it may never apply to anybody else, it could. It could apply. It could have, and then you have. If you don't challenge it, you lack addressability. Let me ask you a very straightforward question. You don't quarrel with the idea that a municipality can enact an ordinance that imposes location, height, and overall size restriction? Absolutely not. They should. They can and they should. There's no problem with that. And they should do it without looking at content. So your signs could very well be restricted to an industrial zone? They could restrict all signs to certain heights. I don't believe they should do it based on content, and they don't have to. Many, many ordinances do it the right way. We're just talking about a matter of zoning. Yes, they can. You can put your sign over there, but you just cannot put it over there where there is a housing development. Oh, absolutely. This is zoned for industrial, and that's it. Absolutely. It would be fine to say residential lots can only have 15 square feet of signage, for example. And it would be fine to say commercial lots can only have X square feet of signage. With this much frontage, you can only have this much. What's the essence of your quarrel with the municipal ordinance? The essence of it is content-based decision-making is what dictated the result here. When you say that, you mean commercial, non-commercial? What are you talking about? This definition of billboard clearly sweeps within its ambit some non-commercial messages. It does. If you said church cookie bake sale, two doors down, that's a service or a product available. That's non-commercial. But it also sweeps within its ambit many pure non-commercial messages. That is not allowed. You're not seeking to make this a test case because we have this very patriotic support our troops as opposed to a cake sale down the road. This is a money-making operation. I mean, you're selling advertising. That's what you want to sell on each of the sites you've identified. That's really what you want to sell. My clients make no apologies for being very passionate about the things they believe in, and the court found in its order that they first and foremost want to get their non-commercial, religious, and faith-based messages to the community. First and foremost? Is that what the court said? Where did that say? They do say that. The court had to because it was in a motion to dismiss phase, and that's in the complaint. Are you saying that your support our troops signed, had it been in the industrial area and complied from a size standpoint, are you saying that it would not have been permitted? Well, it's not a billboard. We can all agree to that. We've been through that analysis. It's clearly not a billboard. So, yes, it would not have been allowed because billboards in the industrial zone are allowed to do that. But you say it would not have, but we don't know that that's the way that the city would interpret it. They say service rendered would include something like that. Well, so, I mean, if that's the way they're going to enforce it, I think we need to wait for an as-applied challenge, don't we? Well, you might need to wait for summary judgment because in our complaint, it's clear that they don't enforce it that way, and that's the presumption that you have to take at the motion to dismiss phase in our favor. Now, this is premature dismissal on that basis. You're going to find they have a long tradition of allowing any non-commercial messages in the city. We aren't there yet. It's premature. But none of this is in the complaint. Your Honor, their history of regulations to their favor is not something we would get into. That's something their burden would bring into the court. Our impression is that it's clearly phased. Hold on. You know what? Your complaint says sign regulations are impermissibly content-based, and then it says defining billboards to include signs bearing commercial and or non-commercial unrelated to the premises. You're arguing something that is totally contrary to what your complaint says. Let me just clarify that, Your Honor. This clearly includes non-commercial messages. Like I said, church, festival, two doors down. That's a non-commercial message that is a billboard because it's something rendered like something available two doors down at a church. Okay? It's non-commercial. It is there, and it's on another premises. But abortion is murder or stop the war does not qualify, so it does include non-commercial. But that's not in your complaint. Your complaint says bearing commercial and non-commercial. It's not in your complaint. Wait. First of all, this court determines how an ordinance should be interpreted. Who determines what's in a complaint? We do. You do. Okay. And you clearly said it's improperly discriminatory based on content and disfavors non-commercial messages. That's in there, Your Honor. It says it disfavors non-commercial speech. It says impermissible for the city to favor commercial over non-commercial, but it doesn't allege that billboard includes only commercial. It says commercial and non-commercial. The city ordinance is the city doing its thing, and what it said here is every district, you have to talk about the business and the nature of the business on every freestanding sign. That is their code, believe it or not. I don't know any of this off the bare bones complaint. Then you would dismiss with leave to amend for more analysis, not with prejudice. Well, they only did once when it wasn't right. That was about whiteness. You hadn't bothered to go to the board. Right. You just came right on in. Well, that was arguably allowed by this court's Peachland decision. Well, yeah, you will lose structure, but so they went to the board. The board has ruled, and now you're here, and we have this bare bones complaint. And even if we, off the bare bones complaint, we address standing, I don't see how we can say you have met your burden to establish Article 3 standing. It's a 17-page complaint, Your Honor. I don't qualify it as bare bones. I think it's very detailed. It's two and a half pages of legal conclusions, I mean, other than, you know, it's a family organization and, you know, the bells and whistles. Yeah, we're talking page 37. Sure. And 38 of the appendix, basically. We're talking paragraph 28 and paragraph 32. That cites 15 sections. Right. Yeah, and paragraph 32, Title 3, was a new process in equal protection grounds. The judge threw out on it, Paul Trombley. It says these are defects, and here's sections that manifest those defects, and that's the way we've pledged. But it would be subject to dismissal for leave to replead, not dismissal with prejudice. Even though we had been there before, we were dismissed only on rightness grounds, not on those grounds. You've got to give a plaintiff. We didn't get past rightness. Yeah. All right. Thank you, Your Honor. Thank you. Thank you, counsel. I think the matter under advisement. Call our next case.